UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Andrew Mellentine
and Debra Mellentine,

                              Case No. 11-11358

      Plaintiffs,

                              Honorable Sean F. Cox

v.

Ameriquest Mortgage Co.,
WM Sepcialty Mortgage LLC, Without Recourse,
Citi Residential Lending, Inc., Mortgage
Electronic Registration Systems, Inc.,
Chase Home Finance, LLC, JP Morgan Chase
Bank, N.A., Orlans Associates, P.C., and
Unknown Lenders,

      Defendants.

_____/

## OPINION & ORDER

      In this action, Plaintiffs assert numerous claims against Defendants relating to residential

loans secured by property located at 14144 Henderson Rd., Otisville, Michigan ("the Otisville

Property") and 521 Garfield Ave., Owosso, Michigan ("the Owosso Property").  The matter is

currently before the court on:

- Defendant Orlans Associates, P.C.'s Motion to Dismiss;

- Defendant Ameriquest Mortgage Company's Motion to Dismiss Pursuant to FED. R. CIV. P. 12(b)(6);

- Defendant CitiResidential Lending, Inc.'s Motion to Dismiss;

- Defendants WM Specialty Mortgage LLC (N/K/A JPMC Specialty Mortgage LLC), JPMorgan Chase Bank, N.A., Chase Home Finance LLC, and Mortgage Electronic Registration Systems, Inc.'s Motion for Judgment on the Pleadings;

1

and

• Plaintiffs' Motion for Judgment on the Pleadings.

The parties have briefed the issues and the Court declines to hold oral argument pursuant to Local Rule 7.1(f)(2).  For the reasons below, the Court shall **GRANT** all of Defendants' motions, and **DENY** Plaintiffs' Motion for Judgment on the Pleadings.

BACKGROUND

On or about March 20, 2011, Plaintiffs Andrew Mellentine and Debra Mellentine (collectively, "Plaintiffs") filed this action against Ameriquest Mortgage Company ("Ameriquest"), WM Specialty Mortgage LLC ("WM"), CitiResidential Lending, Inc. ("CitiResidential"), Mortgage Electronic Registration Systems, Inc. ("MERS"), Chase Home Finance, LLC ("Chase"), JP Morgan Chase, N.A. ("JP Morgan"), Orlans Asscociates, P.C. ("Orlans"), and other "Unknown Lenders."  On April 1, 2011, Defendant Orlans removed this action to this Court based upon federal question jurisdiction.

Plaintiffs' 78-page complaint asserts 19 state and federal claims against Defendants.[1]  On May 11, 2011, this Court remanded the state-law claims to state court.  After remanding the state claims, the only remaining claims before this Court were: "Truth In Lending Act (TILA)" (Count II); "Homeowners Equity Protection Act (HOEPA)" (Count III); "Violation of Real Estate Settlement and Procedures Act (RESPA)" (Count XIV); and "Fair Debt Collection Practices Act" (Count XVIII).

---

[1]On April 21, 2011, the Court entered a "Stipulated Order Allowing Plaintiffs to File a Second Amended Complaint and Extending Time for Defendants to File Responsive Pleadings." Plaintiffs, however, never filed a second amended complaint, but attached a second amended complaint to their response to Defendants' motions.  Because Plaintiffs never filed their second amended complaint, all claims discussed herein are based upon Plaintiffs' original complaint.

On May 2, 2011, Orlans and Ameriquest filed separate motions to dismiss, both pursuant to FED. R. CIV. P. 12(b)(6).  Similarly, on May 9, 2011, CitiResidential filed its own motion to dismiss.

On May 24, 2011, Plaintiffs filed a Combined Response to All Defendants' Motions to Dismiss.  (Plf's Resp. 1, Doc. No. 38).

On June 28, 2011, Chase Home Finance, JP Morgan, MERS, and WM collectively filed a motion for judgment on the pleadings, pursuant to FED. R. CIV. P. 12(c).

On August 31, 2011, after this Court ordered Plaintiffs to show cause, Plaintiffs filed a response to Chase, JP Morgan, WM, and MERS's motion for judgment on the pleadings. Within this same document, Plaintiffs' also moved for judgment on the pleadings.[2]  (Plf's Resp. 2, Doc. No. 49).

In Plaintiffs' response to the motions to dismiss, Plaintiffs' withdraw their Truth in Lending claim and their Home Owner Equity Protection Act claim, admitting that both are time-barred.  Thus, the only remaining claims in this action are Plaintiffs' RESPA claims (Count XIV), and Plaintiffs' Fair Debt Collection Practices Act claims ("FDCPA") (Count XVIII).

According to Plaintiffs' complaint, and the undisputed documentary evidence submitted by Defendants, the facts are as follows.

Plaintiffs lived at the Owosso Property until approximately August of 2005.  Around that

_____

[2]Plaintiffs' motion for judgment on the pleadings is based upon Plaintiffs' Second Amended Complaint, which, as stated in note 1, *supra*, Plaintiffs never filed.  Plaintiffs contend that their motion should be granted because Defendants never answered Plaintiffs' Second Amended Complaint.  Because Plaintiffs' never filed their Second Amended Complaint, the Court declines to address any of the claims relating to Plaintiffs' motion for judgment on the pleadings.

time, Plaintiffs owed $30,200 on their home loan.  On July 5, 2005, Plaintiffs contacted

Ameriquest to assist them in financing the purchase of their "dream home" – the Otisville

Property.

Plaintiffs did not have funds for a down payment on the Otisville Property.  In order to

obtain funds,  Plaintiffs refinanced the Owosso Property and pulled out enough equity to cover

their deposit and down payment for the Otisville Property.

On June 2, 2005, Plaintiffs executed an adjustable rate note and mortgage in the amount

of $59,165, secured by the Owosso Property.  Under the terms of the mortgage, Ameriquest is

named as both the lender and the mortgagee.  The note had an initial interest rate of 11.65%.

(Chase Mtn., Doc. No. 43, Ex. 1).

On August 31, 2005, Plaintiffs executed an adjustable rate note and mortgage in the

amount of $206,910, secured by the Otisville Property.  Under the terms of the mortgage,

Ameriquest is again named as both the lender and the mortgagee.  The note had an initial interest

rate of 12.1%.  (Chase Mtn., Doc. No. 43, Ex. 2).

Plaintiffs arrived to sign closing documents for the Otisville Property on August 31,

2005.  According to Plaintiffs, they were promised a 30-year loan with an interest rate at 6.5%.

At the closing, however, the closing agent notified Plaintiffs that the their loan was an adjustable

rate loan, with an initial rate of 12.1%.

On April 11, 2006, Ameriquest assigned Plaintiffs' mortgage to WM.

Plaintiffs eventually fell behind on their loan payments, and WM initiated foreclosure

proceedings.  On May 4, 2007, the Otisville Property was sold at a sheriff's sale and WM was the

highest bidder.

4

On July 8, 2007, Plaintiffs filed a Chapter 7 bankruptcy petition, and Plaintiffs received a discharge on October 22, 2007.

On August 31, 2007, CitiResidential acquired Ameriquest.  (Plf's Resp., Ex. C).

On April 10, 2008, WM discovered that the foreclosure was inadvertently held due to improperly documented affidavits regarding the sheriff's sale.  Pursuant to M.C.L. 565.451a, WM expunged the sheriff's deed regarding the Otisville Property. (Plf's Resp., Ex. L).  The affidavit expunging the sheriff's deed stated, "MORTGAGEE will not rely on said foreclosure sale and will treat such sale as having not been held and void abinitio."  *Id*.  As a result of the expungement, Plaintiffs regained ownership of the Otisville Property.

On July 28, 2008, Plaintiffs received a loan modification agreement from CitiResidential, and Plaintiffs began making payments on the loan.[3]

On December 15, 2008, CitiResidential, as attorney-in-fact for Ameriquest, again assigned the mortgage relating to the Otissville Property to MERS, as nominee for JP Morgan Chase.  (Plf's Resp., Ex. D).  At some point, Chase became the servicer of the note.

On March 31, 2010, Chase, via Orlans, notified Plaintiffs that their loan was in default and that Chase was beginning foreclosure proceedings on the Otisville Property.  (Plf's Resp. Ex. H).

On March 28, 2010, MERS assigned the mortgage back to Ameriquest, which was now known as CitiResidential.  (Plf's Resp., Ex. E).

In April of 2010, Plaintiffs contacted Chase in an attempt to receive another loan

---

[3]It is unclear how the rights to the mortgage and note returned to CitiResidential after CitiResidential assigned the mortgage to WM.

5

modification.  After failing to receive assistance from Chase, Plaintiffs sent Chase and Orlans a

Qualified Written Request ("QWR") on July 31, 2010.  (Plf's Resp., Ex. N)

 Chase sent Plaintiffs' a written acknowledgment of the QWR on August 10, 2010.  (Plf's

Resp., Ex Q).  On October 1, 2010, Chase responded to Plaintiffs' QWR.  (Plf's Resp., Ex R).

 After discussing a potential loan modification with Chase, Plaintiffs received a letter from

Chase indicating that the foreclosure date was adjourned to November 3, 2010.

 On October 25, 2010, Plaintiffs received a letter from Chase indicating that Plaintiffs did

not qualify for a loan modification.

LEGAL STANDARD

 Defendants Orlans, Ameriquest, and CitiResidential bring their motions pursuant to FED.

R. CIV. P. 12(b)(6).  In assessing a motion to dismiss for failure to state a claim under Rule

12(b)(6), the Court must treat all well-pleaded allegations in the complaint as true.  *Kostrzewa v.

City of Troy*, 247 F.3d 633, 638 (6th Cir. 2001).  In order for a complaint to survive a motion to

dismiss for failure to state a claim under Rule 12(b)(6), "[f]actual allegations must be enough to

raise a right of relief above the speculative level, on the assumption that all the allegations in the

complaint are true (even if doubtful in fact)."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555

(2007).  "While legal conclusions can provide the framework of a complaint, they must be

supported by factual allegations."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009).  Dismissal is

only proper if, based upon the pleadings, the plaintiff does not have a "reasonably founded hope"

of making his or her case.  *Twombly*, 550 U.S. at 555.

 Defendants WM, JP Morgan, Chase, and MERS, as well as Plaintiffs, bring their motions

for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c).  Motions for judgment on the

6

pleadings under FED. R. CIV. P. 12(c) are analyzed under the same standard as motions to dismiss pursuant to FED. R. CI.V P. 12(b)(6). That standard is as set forth in *Albrecht v. Treon*, 617 F.3d 890, 893 (6th Cir. 2010). Just as a motion to dismiss under FED. R. CIV. P. 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff, and accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief. *Id*.

ANALYSIS

I.     <u>Orlans' Motion to Dismiss:</u>

    A.     <u>Plaintiffs' RESPA Claim:</u>

With regard to their RESPA claim, Plaintiffs make two general claims against all Defendants, alleging that: (1) Defendants failed to provide the Special Information Booklet explaining the settlement costs within three business days after Plaintiffs' submitted their loan application, in violation of 24 C.F.R. § 3500.6; and (2) Defendants failed to disclose all affiliated business arrangements, in violation of 24. C.F.R. § 3500.6. Plaintiffs' also make a specific RESPA allegation against Orlans, alleging that Orlans' response to Plaintiffs' QWR was incomplete, in violation of 12 U.S.C. § 2605(e).

In its motion, Orlans insists that it is not subject to a RESPA claim. First, Orlans asserts that RESPA applies to loan origination issues, and since Orlans was not a participant in the loan origination, it is therefore not liable for any alleged RESPA claims. Additionally, Orlans contends that it is not a servicer as defined by RESPA, and therefore it is not subject to liability for any incomplete responses to Plaintiffs QWRs.

Plaintiffs' general RESPA allegations in Plaintiffs' complaint make no mention of any

7

conduct by Orlans that would constitute a RESPA violation. Indeed, all the facts indicate that Orlans, a law firm, participated only in the foreclosure proceedings with respect to the Otisville Property. In fact, in Plaintiffs' response to Orlans' motion to dismiss, Plaintiffs only address Orlans' alleged failure to properly respond to Plaintiffs' QWR.

QWRs under RESPA are governed by 12 U.S.C. § 2605(e), which is titled "Duty of loan *servicer* to respond to borrower inquiries," and provides:

> (1) Notice of receipt of inquiry
>
>> (A) In general
>>
>> If any *servicer* of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the *servicer* shall provide a written response acknowledging receipt of the correspondence within 20 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C. § 2605(e) (emphasis added). Additionally, RESPA defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." 12 U.S.C. § 2605(i)(2). RESPA also states:

> The term 'servicing' means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

12 U.S.C. § 2605(i)(3).

It is clear that RESPA, under 12 U.S.C. § 2605, sets forth certain duties of a loan *servicer* after receiving inquiries from borrowers. *See also Walker v. Michael W. Colton Trust*, 47

8

F.Supp.2d 858, 864 (E.D. Mich. 1999) (Gadola, J.).  In their complaint, Plaintiffs do not set forth facts that establish that Orlans is a servicer of Plaintiffs' loan.  Because Orlans was not the servicer of the loan, Plaintiffs have failed to state a claim upon which relief can be granted.  Accordingly, the Court shall grant Orlans' motion to dismiss as it relates to Plaintiffs' RESPA claims against Orlans.

      B.    <u>FDCPA Claim:</u>

In Count XVIII of Plaintiffs complaint, Plaintiffs' allege that all Defendants, including Orlans, violated the Fair Debt Collections Practices Act ("FDCPA").  Defendants allege:  "The Defendants engaged in continuous threats of foreclosure over several years in violation of FDCPA;" "Defendants alleged loan balances that were intentionally or negligently incorrect and failing to justify their assertions of the loan balance upon request;" "Defendants used fraudulent documents to collect their debt ;" and "Defendants made false or material misrepresentations or implications, engaged in oppressive conduct and unfair practices in an attempt to collect a debt." (Complaint at 74).  Despite these summary allegations, it appears from Plaintiffs' response that Plaintiffs' sole FDCPA claim is that an attorney for Orlans, Machell Isaacs, signed an allegedly fraudulent assignment from MERS to Ameriquest on March 28, 2010, and relied on other allegedly fraudulent assignments to initiate foreclosure proceedings.

Orlans contends that Plaintiffs have failed to establish that Orlans is a "debt collector," as defined by the FDCPA, and that Plaintiffs' FDCPA allegations are conclusory and are unsupported by any factual development.  The Court agrees that Plaintiffs have failed to establish that Orlans is a debt collector under the FDCPA.

The FDCPA defines "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection

of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

Plaintiffs' contend that Orlans is a debt collector because they have attempted to foreclose

on a "copious" number of foreclosures.  (Plf's Resp. at 20).  Plaintiffs' also argue that Orlans

presented itself as a debt collector in letter sent to Plaintiffs on March 31, 2010, notifying

Plaintiffs' that their loan was in default and that Chase had initiated foreclosure proceedings.

The top of the letter reads, "Federal law requires us to advise you that communication with our

office could be interpreted as an attempt to collect a debt and that any information obtained will

be used for that purpose."  (Plf's Resp., Ex. H).

Contrary to Plaintiffs' position[4], the Sixth Circuit has held  that "an enforcer of a security

interest ... falls outside the ambit of the FDCPA for all purposes, except for the purposes of §

1692f(6)."  *Montgomery v. Huntington Bank*, 346 F.3d 693, 700–01 (6th Cir. 2003); *see also*

*Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir .2009) (holding, "the

plain language of the FDCPA supports ... the conclusion that foreclosing on a security interest is

not debt collection activity for purposes of [certain FDCPA provisions]").  In this case, Orlans

was simply attempting to notify Plaintiffs that they were in default and Chase had commenced

---

[4]Plaintiffs' rely on *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, ⸺ U.S.
⸺, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010).  Although *Jerman* involved a law firm, that case
discussed the scope of the FDCPA's bona fide error defense.  Here, the bona fide error defense is
not an issue before the Court.  Similarly, Plaintiffs rely on *Heintz v. Jenkins*, 514 U.S. 219 (1995)
to support their argument that a Orlans is a debt collector. In *Heintz*, the Court held that lawyers
who regularly try to collect consumer debts through litigation are debt collectors. The Court
stated that the FDCPA applies to "a lawyer who regularly tries to obtain payment of consumer
debts through legal proceedings."  Here, Orlans did not try to collect on a debt, but rather
informed Plaintiffs that it was going to proceed with foreclosure to enforce the security interest.

foreclosure proceedings.  Thus, Orlans was enforcing Chase's security interest in the Otisville

Property and not seeking to collect a debt.  *See also Kevelighan v. Trott & Trott, P.C.*, 2011 WL

2111084 (E.D. Mich. 2011) (Duggan, J.); *Chilenko v. Amer. Home. Mortg. Serv., Inc.*, 2011 WL

837025 (E.D. Mich. 2011) (Roberts, J.); *Rogers v. RBC Mortg. Co.*, 2011 WL 3497432 (E.D.

Mich. 2011) (Edmunds, J.).

Accordingly, the Court shall grant Orlans' motion to dismiss as it relates to Plaintiffs'

FDCPA claim because Plaintiffs have failed to establish that Orlans is a debt collector under the

FDCPA.

II.     Ameriquest's Motion to Dismiss:

In its motion to dismiss[5], Ameriquest asserts that Plaintiffs' claims should be dismissed

because Plaintiffs executed a release on August 22, 2006, releasing Ameriquest from any claims

in relation to the Owosso Property.  (Release, Ameriquest Mtn., Ex. 1).

The release agreement explicitly states:

> FOR GOOD AND VALUABLE CONSIDERATION, including but
> not limited to, payment of Three Thousand and 00/100 ($3,000.00)
> Dollars in hand paid. . . I, DEBRA MELENTINE AND I, ANY
> MELLENTINE. . . do hearby expressly release, waive, and forever
> discharge AMERIQUEST MORTGAGE COMPANY from any and
> all claims, demands, suits, actions or causes of action of any nature
> whatsoever.

In response, Plaintiffs' do not address any of the issues raised in Ameriquest's motion to

dismiss, including Ameriquest's release defense.  Although it appears that the release precludes

Ameriquest from claims related to the Owosso Property, the release does not address any claims

---

[5]Ameriquest's motion is based upon the allegations of Plaintiffs' Second Amended
Complaint even though the Second Amended Complaint was never filed.  Nonetheless, the same
arguments apply to Plaintiffs' First Amended Complaint.

11

that may arise out of the Otisville Property.  Even if Ameriquest is released from any claims by

Plaintiffs', Ameriquest has sufficiently established that Plaintiffs' have failed to state a claim

against Ameriquest.

        A.     <u>Plaintiffs' RESPA Claims:</u>

        In Plaintiffs' response, Plaintiffs state that their RESPA claims are not directed at

Ameriquest.  (Plf's Resp. 1 at 2).  Accordingly, the Court shall grant Ameriquest's motion as it

relates to Plaintiffs' RESPA claims against Ameriquest.

        B.     <u>Plaintiffs' FDCPA Claim:</u>

        Plaintiffs' complaint does not make specific FDCPA allegations against Ameriquest.  In

Plantiffs' response brief, however, Plaintiffs implicate Ameriquest in an allegedly fraudulent

assignment that occurred on December 15, 2008, between CitiResidential, who served as

attorney-in-fact for Ameriquest, and MERS.  (Plf's Resp. 1 at 3).  Still, Plaintiffs' response to

Defendants' motions only refers to conduct by CitiResidential, WM, and Orlans.  Plaintiffs'

complaint therefore fails to state a claim against Ameriquest.

        Even if Plaintiffs' complaint did state a FDCPA claim against Ameriquest, Plaintiffs'

claims are barred by the FDCPA's one-year statute of limitations.  Under the FDCPA, "An action

to enforce any liability created by this subchapter may be brought. . . within one year from the

date on which the violation occurs."  16 15 U.S.C.A. § 1692k(d); *Purnell v. Arrow Financial*

*Services, LLC*, 303 Fed.Appx. 297, 298 (6th Cir. 2008).  Both notes and mortgages at issue were

executed in 2005 and Plaintiffs did not file this action until 2011.  Furthermore, any possible

FDCPA claims relating to the 2008 assignment of the Otisville property by CitiResidential, as

attorney-in-fact for Ameriquest, also occurred over a year before Plainiffs filed this action.

12

Plaintiffs' FDCPA claims against Ameriquest are therefore time-barred.

III.   CitiResidential's Motion to Dismiss:

    A.   Plaintiffs' RESPA Claim:

In Plaintiffs' response, Plaintiffs' state that their RESPA claims are not directed at CitiResidential because CitiResidential was not a servicer of Plaintiffs' note.  (Plf's Resp. 1 at 2). Accordingly, the Court shall grant CitiResidential's motion as it relates to Plaintiffs' RESPA claims against CitiResidential.

    B.   Plaintiffs' FDCPA Claim:

Like the FDCPA claims against Ameriquest, Plaintiffs' complaint does not make specific FDCPA allegations against CitiResidential.  In Plaintiffs' response, however, Plaintiffs allege that CitiResidential violated the FDCPA by fraudulently assigning Plaintiffs' mortgage to MERS on December 15, 2008.  Plaintiffs fail to allege which sections of the FDCPA that CitiResidential violated, but assert that the assignment was "bogus" because it was signed by "robosigners."

As stated above, any potential FDCPA violations arising out of the December 15, 2008 assignment are time-barred by the one-year statute of limitations.

IV.   WM Specialty, JP Morgan Chase, Chase Home Finance, and MERS's Motion for Judgment on the Pleadings:

    A.   Plaintiffs' RESPA Claims Against Chase:

In Plaintiffs' response to Orlans, Ameriquest, and CitiResidential's motions to dismiss, Plaintiffs assert that their RESPA claims are directly only toward Chase and Orlans.  As stated above, Plaintiffs' complaint contends that Defendants failed to make certain disclosures during the origination of the loan, and also failed to adequately comply with Plaintiffs' QWR.  Because

Chase was not involved in the origination of the loan, the only potential RESPA violations that may apply to Chase are those that involve Plaintiffs' QWR to Chase.

With regard to the QWRs, Plaintiffs assert that Chase failed to properly respond to Plainitffs' QWR. Even if Chase failed to properly respond to Plaintiffs' QWR, which the Court does not so find, Defendants contend that Plaintiffs' RESPA claim against Chase should be dismissed because Plaintiffs have failed to plead actual damages as a result of any alleged RESPA violations. The Court agrees. The only potential RESPA violation by Chase that is pleaded in Plaintiffs' complaint is that Chase submitted its response to Plaintiffs' QWR ten days late. (Complaint at 33). Plaintiffs, however, never pleaded actual damages, or any damages, relating to Chase's alleged improper response to Plaintiffs' QWR.

As stated above, Plaintiffs allege that Chase violated § 2605(e) by not properly responding to Plaintiffs' QWR. Section 2605(f) provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals. In the case of any action by an individual, an amount equal to the sum of—
>
>> (A) any actual damages to the borrower as a result of the failure; and
>>
>> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000.

12 U.S.C. § 2605(f).

In this case, Plaintiffs are not alleging a pattern or practice of noncompliance and are limited to actual damages resulting from Chase's failure to properly respond to the QWR.

14

Therefore, in order to properly allege a claim under § 2605(e), a plaintiff must allege actual

damages.  *See Kevelighan v. Trott & Trott, P.C.*, 2011 WL 2076336 at *4 (E.D. Mich. 2011)

(Duggan, J.) ("A plaintiff asserting a claim under § 2605(f) must allege that she was actually

harmed by the RESPA violation."); *Battah v. ResMAE Mortg. Corp.*, 746 F.Supp.2d 869, 876

(E.D. Mich. 2010) (Rosen, J.) ("To successfully plead a RESPA claim, Plaintiff must allege

actual damages, which resulted from the Bank Defendants' failure to respond to Plaintiff's

QWRs.").

Because Plaintiffs make no mention of actual damages under § 2605 in their complaint or

response brief, the Court shall grant WM, JP Morgan, Chase, and MERS' motion as it relates to

Plaintiffs' RESPA claims.

B.    Plaintiffs' FDCPA Claim:

As stated above, Plaintiffs complaint alleges FDCPA violations against all Defendants.

Plaintiffs' complaint, however, is void of any factual allegations implicating WM, JP Morgan,

Chase, and MERS for violating the FDCPA.  Instead, Plaintiffs' complaint, as well as their

responses to Defendants' motions, focus solely on Orlans' alleged violations of the FDCPA,

which are discussed above.  Plaintiffs' have failed to plead any facts as to how or when WM, JP

Morgan, Chase, and MERS violated the FDCPA.

Moreover, Plaintiffs' have not pleaded that WM, JP Morgan, Chase, and MERS are "debt

collectors" under the FDCPA.  As stated in Part I, above, an enforcer of a security interest does

not constitute a "debt collector" under the FDCPA.  *Montgomery,*, 346 F.3d at 700–01 (6th Cir.

2003).  Accordingly, the Court shall grant Defendants' motion because Plaintiffs' have failed to

plead a plausible claim for relief under the FDCPA against WM, JP Morgan, Chase, and MERS.

CONCLUSION

For the reasons stated above, it is **HEREBY ORDERED** that Orlans' motion to dismiss (Doc. No. 26), Ameriquest's motion to dismiss (Doc. No. 28), CitiResidential's motion to Dismiss (Doc. No. 33), and WM, JP Morgan, Chase, and MERS's motion for judgment on the pleadings (Doc. No. 43) are **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' motion for judgment on the pleadings (Doc. No. 49) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' complaint is **DISMISSED**.

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Court

Dated:  October 20, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 20, 2011, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager